The first case is Patel v. The City of New York. Good morning, Your Honor. May it please the Court, my name is Madwe Buyan. I represent Piyush Patel, a black man of Indian national origin, who came to the United States in 1976 and worked for the City of New York for a number of years. We're here on a number of issues, three issues. I think we've laid them out fully in our brief. The first issue is that in dismissing partially on the pleadings, Mr. Patel's retaliation claim, we believe, that the Court below heard. The second point is that on dismissing the remaining claims, which were claims for failure to promote to three positions, and a retaliation claim for acts and events that occurred after he had filed this lawsuit, we believe that the Court heard also in construing the facts in such a manner that it did not show the true disputes between the parties and applied improper standards. The third point that we have is that the Court below failed to analyze the facts before her on the motion for summary judgment under the New York City Human Rights Law, which requires a different and independent liberal analysis. We submit that on all of these points that the answer should be that it should be sent back to the Court below for further proceedings. On the first issue, the issue here was that Mr. Patel complained in writing, sent an email in writing, in which he specifically said that, despite the recommendation by a senior manager that his salary and his demotion, which occurred in 2006, that his salary be restored by $5,000, nothing was done. He put it in writing. Before he did that, he already was aware that that recommendation was made and efforts were being made to address the restoration of his salary. But once he sent that email, in which he specifically said in writing that every other person has been made whole by the restoration of their salary— Counsel, is Mr. Patel still working for the city? Yes, he's still employed, yes, as a construction project manager for the same department, for the same agency, under the same supervisors, yes. And you claim a failure to promote, but did Mr. Patel make an application for the job when it became open? Your Honor, he is excused from making applications under the facts on this case for these positions. The first position, the executive assistant position— Well, as to the first ones, they were posted, but he didn't bother to do it because he believed that it was a fixed job. But that doesn't give him a right not to apply, does it? There was only one which was not posted. I think two of them were not posted, and one was posted on New Year's Eve in such circumstances that he couldn't apply. Already there was somebody in that position who was acting, and the memo announcing the acting of Ms. Kolaris to the executive assistant position quite clearly said that he was acting in that position, and it was posted on New Year's Eve when nobody was there, and it lasted only eight days, when it should last three weeks. And, you know, under those circumstances, it was really futile for him to assume that he would get that position. And also there were a number of other irregularities that were involved here. Mr. Simpopami's position, which is the third position that we challenge in this case, he does not have—Mr. Simpopami does not have the relevant experience in construction management. The only argument being made is that he has an asbestos license, but that's not necessary and relevant to the construction management work that that position requires to be done. The defendants also go further to say that he was not promoted, but he passed the civil service exam, but when you look at the record, there is nothing to show that he passed the civil service exam. If anything, he was a provisional employee, which means he did not pass the exam. What evidence is there that any of this happened on a discriminatory or a retaliatory ground, or that is, a retaliatory ground for a protected action? You know, that he was not promoted, and the major thing in this is always in— that he had been promoted because they didn't like him or because he had political influence or other things of that sort, but what evidence is there that this was due to a protected ground? Well, there is evidence that goes back, you know, to when he complained to DOI in 2006, the background evidence, and there's evidence to show that it was a campaign to demote and not keep a number of Indians, such as himself, and people of, you know, non-U.S. national origin, such as an Egyptian, you know, that were let go. You know, I believe that Judge Preska was incorrect in not considering the earlier evidence. If it was relevant, you know, the fact that it isn't only for hostile action, hostile environment, that such may be relevant, but how was this earlier evidence relevant? It is relevant because this is the same pattern of not allowing an Indian to advance within the same unit, and Mr. Santino, who was the head of the unit at the time of these promotions, was involved in the earlier actions that were taken, you know, against Mr. Patel and other Indians. Now, if you look at it and combine it with the way and manner in which these positions were filled, people would be placed in temporary— I have a question with respect to the New York City human rights law. If we do not agree with you on the federal claims—we agree with you on the federal claims, it's different— but if we do not agree with you on federal claims, but agreed with you on the New York City human rights law, wouldn't the appropriate thing be not to remand, but to dismiss that without prejudice, to have you bringing that in state court? Well, that is one option. I mean, if we get rid of all the federal claims and the only thing that is left there, isn't that the appropriate thing, just to say, if you want to bring that in state court, you can try? That is correct. That is one option that a court could take. A court could also remand it. Counsel, the city human rights law issue, you didn't raise it below, did you? We did. We raised it below. We argued it. We briefed it as much as we could. It's a well-known standard that should be applied, you know, in a case of this nature. It's in our brief. You know, the argument that defendants are making is that we did not analyze it in extension. As I read the briefs, you gave no response to the defendant's contention that has been forfeited because of your failure to raise it below. Well— You didn't respond. No, we raised it below. We did. We did mention it. What they are saying is that we did not brief it extensively. And there is no requirement that we brief it extensively. The law is clear on the subject. We mentioned it in our brief below. Well, you have to do more than mention it. You don't have to go into huge detail, but you have to do more than mention it. Yeah, we did more than mention it quite frankly. We talked about the standard, and the standard was not applied here. You know, admittedly, it's not in dispute that it was not applied. That does not mean that it is a waiver that we are raising for the first time on appeal. Counsel, your time has expired. You have reserved two minutes for rebuttal. Thank you. We'll hear from the City of New York. Good morning, Your Honors. May it please the Court— Oh, sorry about that. You can raise the whole podium. Should I go with this? Okay. Sorry, Your Honors. May it please the Court, my name is Diana Lawless. I appear on behalf of the appellees. I will focus, Your Honors, on the failure to promote issues since that is where your questions were. To address what Judge Calabrese was saying about the positions, what happened is that there were actually five in this litigation originally. I think he's abandoned—I think there were six in total. I think he's abandoned three. Most of them were posted. The ones he's abandoned were certainly posted. There is no dispute that the executive director for space and design position was posted. As to the other two, those are really more like not positions. In the first case, the position that Mr. Cinque Palmi got was a provisional civil service position. It was designed to be a temporary position. And then the first position that Ms. Calabrese got for the executive assistant for special projects, that was really additional duties she took on in addition to the duties she had then. It wasn't really a new job. It was additional duties. But just the fact— It wasn't posted, right? Those two were not—we don't have evidence of postings for those, but we explained. As I just said, we explained why they were not. But just the fact of a posting or a non-posting by itself does not excuse the plaintiff. All that the fact of a non-posting does is to excuse the initial requirement that he has to show that he applied. What the district court said here was very important, which is that this is a situation where Mr. Patel didn't apply for years for jobs. He just never applied for jobs. With respect to his evidence of discrimination of pretext here, he doesn't offer anything really to connect this to his race. He says that he was more qualified, but that's his unsupported, his own belief. That is not enough. He tries to point to what he believes are discrepancies. I just said the posting really wasn't a discrepancy whatsoever. He points to some things about documents and how there weren't documents. But, again, we put in the records we had explaining why each person received— Before the earlier matters that Judge Preska didn't consider, did they speak to discrimination against race with respect to him so that they might be sufficient to raise a question with respect to some of the later things or not? Your Honor, I think that, as you suggested before, they're not relevant. What's really happening is he's trying to use those things, those things he could have brought a litigation about but never did. He's really complaining in 2012 about the 2006 things. My reading of the case law on the background evidence is that in the cases where this Court supplied, particularly the Duke case, that was a situation where there was continued acts of discrimination that all flowed from one big thing that happened, which was, I think— It's true that the earlier cases were of that sort. On the other hand, I think it's a weak argument to say that if there were some acts of discrimination where the discrimination was clear before the statute of limitations and then there's a separate, not continuous, act of discrimination later without very strong or very weak evidence of discrimination that you can look at the earlier ones to inform what happens later. That's perfectly sensible. I'm not saying that that's what happened here, but I don't think you can just say only where there is a continuous thing. That isn't what the point of the earlier discrimination is. It tells you something about what is happening later. I didn't mean to say that that's the only way that that could be raised, but I agree with Your Honor. I think that what happened here is that his— First of all, there's no case that I've seen that background evidence by itself can be the only thing to raise an inference of discrimination. That seems to be the only thing he really is offering here that has any tie. Here, it's not as clear that there was a discriminatory act here. He was demoted. His belief and his testimony was that it was because of race discrimination. We have presented documents, our contemporaneous documents from the time, showing basically that at that time there was a reorganization of that division. He was demoted for performance issues. That's everything that we've offered, and to suggest that that evidence can all come in and be the reason why he has raised the tribal issues to pretext, there would be too many issues for the court or for the jury to consider. They'd basically be litigating the time-barred claims rather than the claims that are at issue, which are limited to the failure to promote. I believe that he's only raised the background with respect to the failure to promote and not the retaliation claims, one which is from the motion to dismiss stage and the others which are from acts that happened after he brought the litigation. Can we talk about the city human rights law, which we all agree has a lower standard, treated less well than the other statutes that we're talking about today? You argue that it was forfeited below. Can you elaborate on that? Sure. I don't have the exact page, but if you look at his memo below, he made the argument only in one portion of one sentence where he said that the city human rights law has a broader standard. This court has found that that is not enough to raise for review. He doesn't really make any— Well, you know, what is enough for review depends also on the issue. If the issue is a very simple one, like you must consider this separately because Mihalik says so, just to say that is enough to raise it. I mean, you don't need to make more argument about it. That's enough. So did he say that much here and would that be enough to raise it? I think what he did, what I would point to, I know it's a summary order of the Fort case where you just basically say what the standard is. This court's found that that's not enough. That's all he's done. He didn't apply it to the facts of this case? He did not. And I would say that what the district court did here was proper, and this court has found many times, even after Mihalik, that if you analyze, you can basically analyze the different statutes together where, as here, the record establishes as a matter of law that discrimination played no role in the actions. What we've laid out in our brief is that none of the things he's raised are enough to raise a tribal issue of fact as to discrimination, as to pretext, and those things would be the same under both the city human rights law. Well, you cite a summary order to that effect, but citing summary orders is always a little dangerous. I understand that, Your Honor. I understand they're not binding precedent, but it's analysis that other panels of this court have taken in the past. But our position is that, in our view, there is no difference because the things that he's raising that really do not have a connection to his race are not enough to raise tribal issues of fact as to pretext under any of the laws of statutes that he's raising here. If Your Honors would like, I could address the other two issues, the motion to dismiss the retaliation claim was proper because there was no adverse action as a result of sending the email. The plaintiff needed to raise a connection to the email, but he did not offer one. And as to the other two retaliatory acts on summary judgment, as the district court found, the two good performance evaluations immediately changed to very good or non-adverse employment actions. And to the extent that he's talking about this written admonishment, his own testimony shows that it was a reasonable enforcement of preexisting policy. It happened to other people, basically his group of people within his title. There's something a little odd about the relatively negative. I don't know if a good is a negative or not, but let's assume it is a negative. And then the fact that it was raised, when that is done because of outside influence, that's a little unusual. I mean, here he had outside influence, which came in, and then they raised it. And I wonder whether the original rating doesn't have more weight when it wasn't internal to raise it, but due to, oh, we'll placate these political influences that he had. It's a little bit less good. Well, Your Honor, I don't know how much it has to do with the he did have investigations, he had other people come in. His testimony was basically he went to them and he said, I'm not happy with it, and they changed it immediately. Even if I think that they were nervous about it or they were afraid of something happening, they didn't do anything to him because there was no ultimate effect on him at all. It was that, okay, we will raise it to the very good. If Your Honors have no further questions, we will rest on our break. Thank you, Counsel. Counsel, you reserve two minutes for rebuttal. Yes, thank you. Your Honor, let me just start from the last point about retaliation. First of all, Mr. Patel is a man whose work history is outstanding, always get it very good, never good, very good. Now he files this lawsuit. He gets good, and his performance was very good. He goes to them. Don't they change it at his request? I'm sorry? Don't they change the rating at his request? Well, they changed it because he threatened, and he said clearly to them by making it good, instead of very good, which I always have. How is it adverse? It's adverse because it is in retaliation because he filed this complaint, and he would dissuade a reasonable person from bringing a complaint of discrimination. If you're used to having good, very good, and all of a sudden you bring a lawsuit, and you complain, and you give them good. You think that under the Supreme Court decision, which, again, Judge Prescott didn't apply, but was it harmless or not, that under the Supreme Court, people would be deterred from bringing a suit because they were then rated good rather than very good, and when they complained, it went back up to very good? That is correct. And we started a whole slew of cases. Even from this statute, there's an eight-block case that was cited in our brief in 2010, the decision of this case, that if you're used to getting a certain— It didn't deter him from complaining. Well, he had to. He brought it to the attention to say this is retaliation. He put it in writing by email, and then they were then forced to change it. If he had not complained, he would have said, and it affected him personally in his mind. The other thing also I want to point out, Your Honor, which is very important, is that there is a history of past discrimination against a particular group, people of non-U.S. national origin, particularly Indians, and he's one of them. And one of the actors, Mr. Santino, was there from the beginning, and at the point of these complaints, of these promotions, he was in charge of GSS, that unit. And there's a lot of irregularities in the process. Time has expired, but finish the thought. Okay, yes. So the point I'm making is there are several tribal issues of fact that cannot be resolved on this motion based on the irregularities, based on Mr. Patel's qualification and his experience, and his past experience with discrimination when he was demoted in 2006. We believe that this court should reverse. Thank you. Thank you both. We'll reserve decision.